UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

TABITHA REED                                              PLAINTIFF

VS.                              CIVIL ACTION NO. 3:17CV710TSL-LRA

MUNCIPALITY OF TAYLORSVILLE,                             DEFENDANTS
MISSISSIPPI, ET AL.


MEMORANUM OPINION AND ORDER

        This cause is before the court on the motion of defendants
Brad White and Gabe Horn, in their individual capacities, for
summary judgment based on qualified immunity.  Plaintiff Tabitha
Reed has responded in opposition to the motion.  The court,
having considered the memoranda of authorities, together with
attachments, submitted by the parties, concludes the motion
should be granted in part and denied in part, as set forth
herein.

        On February 10, 2017, plaintiff Tabitha Reed was arrested
by defendant Brad White, an officer with the City of
Taylorsville Police Department, and Taylorsville Police Chief
Gabe Horn, and charged with possession of controlled substances.
She filed the present action on July 23, 2017, against the City
of Taylorsville, and against Chief Horn and Officer White, in
their individual and official capacities, asserting claims under
42 U.S.C. § 1983 for false arrest, false imprisonment, unlawful

1

search and seizure, malicious prosecution, conspiracy, and reckless investigation, all allegedly in violation of her rights under the Fourth and Fourteenth Amendments of the United States Constitution.[1]  She also asserted a § 1983 claim against Chief Horn for failure to train/supervise.[2]  White and Horn have now moved for summary judgment on the basis of qualified immunity.[3]

<u>The Arrest</u>

On the date of Reed's arrest, Chief Horn learned there was an outstanding arrest warrant from Smith County for Davin Clark, who he had just seen at Reed's residence, which is just down the street from the police station.  After obtaining a copy of the warrant from Smith County, Chief Horn contacted Officer White, and the two went to Reed's residence.  Reed's daughter answered

---

[1]    The case was originally filed in the Circuit Court of Smith County but was timely removed to this court on the basis of federal question jurisdiction under 28 U.S.C. § 1331.

[2]    In addition to her federal claims, Reed asserted claims against the City of Taylorsville under the Mississippi Tort Claims Act, Mississippi Code Annotated § 11-46-1 *et seq.*

[3]    In May 2018, following a period of immunity-related discovery, Chief Horn and Officer White filed a motion for summary judgment in which they argued that plaintiff's claims were barred not only by qualified immunity but also by <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), since the criminal charges arising out of Reed's arrest were still pending.  On a joint motion of the parties, the case was stayed pending resolution of those charges.  Those charges were eventually dismissed, and in March 2020, this court lifted the stay, following which defendants filed the present summary judgment motion based on qualified immunity.

the door when White knocked.  When asked, she informed White that her mother was not home; and in response to his inquiry, she stated that Clark was not in the residence.  At White's request, the daughter telephoned Reed, who verbally consented to allow the officers to search the home for Clark.  They entered the home, called out for Clark and looked around for a minute or two but did not find Clark.

Soon after leaving the residence, Officer White received a call on his cell phone from a woman named Charlotte who worked at the Ward's restaurant where Reed was employed.  Charlotte told White that Clark, in fact, had been at Reed's residence, hiding, when they first went there to look for him and that he was still there.  White called Reed and asked for permission to search the home for Clark again.  Reed agreed.  The officers returned to the residence and again spoke with Reed's daughter, who answered the door.  White asked whether Clark was in the home; she said no.  He asked whether anyone else was in the home; and although she said no, White heard a toilet flush in the master bathroom as they were speaking.  He and Horn proceeded through the master bedroom and into the bathroom, where they found Clark hiding in a cabinet.  Officer White ordered Clark to come out, which he did.  White laid him face down on the end of the bed and handcuffed him behind his back. White patted Clark down, and found a glass pipe in his pocket,

which White handed to Horn.  Horn turned to set the pipe down on
a nearby dresser and noticed what appeared to be loose marijuana
and a baggie containing what looked like marijuana in a
"glittery" make-up-type box on the dresser and a "blunt" lying
next to it.  White then looked around and noticed a box
resembling a shoebox on the floor nearby.  He opened the box and
found a needle, one or two spoons and a small clear bag of
crystallized substance that looked like crystal methamphetamine.
Both substances were field tested and were determined to be
marijuana and crystal methamphetamine, respectively.  When
asked, Clark denied that either belonged to him.

Reed was subsequently picked up and arrested, charged with
possession of marijuana (a misdemeanor) and possession of
methamphetamine (a felony).  At the time of her arrest, Reed had
recently cashed her tax refund check and was in possession of
$3,073.  This cash was seized in connection with her arrest
pursuant to Mississippi Code Annotated § 41-29-153(a)(5) and
(7).  Ultimately, the money was returned after plaintiff
enlisted the aid of an attorney at the cost of $1500.

Qualified Immunity Principles

Chief Horn and Officer White assert they are entitled to
summary judgment based on qualified immunity.  Qualified
immunity protects government officials "from liability for civil
damages insofar as their conduct does not violate 'clearly

4

established' statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982).  To determine whether a defendant is entitled to qualified immunity, courts engage in a two-step analysis.  "First, they assess whether a statutory or constitutional right would have been violated on the facts alleged.  Second, they determine whether the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." Griggs v. Brewer, 841 F.3d 308, 313 (5th Cir. 2016) (citation omitted).  "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Mullenix v. Luna, --- U.S. ----, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015) (per curiam) (quotation omitted).  While there does not need to be a case directly on point, "existing precedent must have placed the . . . constitutional question beyond debate." Id. (quotation omitted).

Under Federal Rule of Civil Procedure 56(a), summary judgment is required when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Typically, on a summary judgment motion, the moving party bears the initial burden of showing the absence of a

genuine issue of material fact.  Celotex Corp. v. Catrett, 477
U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).
If the moving party demonstrates an absence of evidence
supporting the nonmoving party's case, then the burden shifts to
the nonmoving party to come forward with specific facts showing
that a genuine issue for trial does exist.  Matsushita Elec.
Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct.
1348, 1356, 89 L. Ed. 2d 538 (1986).  However, a government
official's good faith assertion of a qualified immunity defense
alters the usual summary judgment burden of proof.  Michalik v.
Hermann, 422 F.3d 252, 262 (5th Cir. 2005).  Once the official
asserts qualified immunity, the plaintiff has the burden to show
there is a genuine and material dispute as to whether qualified
immunity applies.  Castorena v. Zamora, 684 Fed. Appx. 360, 363
(5th Cir. 2017) (citations omitted).  See also Thompson v.
Upshur Cty., TX, 245 F.3d 447, 456 (5th Cir. 2001) ("We do not
require that an official demonstrate that he did not violate
clearly established federal rights; our precedent places that
burden upon plaintiffs.") (internal quotation marks and citation
omitted).

     When evaluating whether a genuine dispute as to any
material fact exists, the court considers "all of the evidence
in the record but refrain[s] from making credibility
determinations or weighing the evidence."  Delta & Pine Land Co.

v. Nationwide Agribusiness Ins. Co., 530 F.3d 395, 398-99 (5th Cir. 2008).  In so doing, the court must draw all reasonable inferences in favor of the nonmoving party, even on a summary judgment motion based on qualified immunity.  See Brown v. Callahan, 623 F.3d 249, 253 (5th Cir. 2010) ("The plaintiff bears the burden of negating qualified immunity, but all inferences are drawn in his favor.").

Unlawful Search

The Fourth Amendment ensures that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause."  The Supreme Court has thus held that "'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" Arizona v. Gant, 556 U.S. 332, 338, 129 S. Ct. 1710, 1716, 173 L. Ed. 2d 485 (2009) (quoting Katz v. United States, 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967)).  See also Riley v. California, 573 U.S. 373, 382, 134 S. Ct. 2473, 2482, 189 L. Ed. 2d 430 (2014) (internal quotation marks omitted) ("In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement.").  Three exceptions are implicated in

the case at bar.  First, a search is reasonable and no warrant
is required when the subject consents.  See Birchfield v. North
Dakota, 136 S. Ct. 2160, 2185, 195 L. Ed. 2d 560 (2016) (citing
Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S. Ct. 2041, 36
L. Ed. 2d 854 (1973)).  Under this exception, "[t]he government
does not need a warrant if it receives: (i) consent; (ii) that
is voluntarily given; (iii) by someone with actual or apparent
authority; and (iv) the search does not exceed the scope of the
consent received."  United States v. Freeman, 482 F.3d 829, 831-
32 (5th Cir. 2007).

Second, a search incident to a lawful arrest is an
exception to the warrant requirement.  Gant, 556 U.S. at 338,
129 S. Ct. 1710.  The Supreme Court has described the reasons
for and scope of this exception as follows:

> [A] search incident to arrest may only include "the
> arrestee's person and the area 'within his immediate
> control'—. . . mean[ing] the area from within which he
> might gain possession of a weapon or destructible
> evidence."  [Chimel v. California, 395 U.S. 752, 763,
> 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969)].  That
> limitation . . . ensures that the scope of a search
> incident to arrest is commensurate with its purposes
> of protecting arresting officers and safeguarding any
> evidence of the offense of arrest that an arrestee
> might conceal or destroy.  See ibid. (noting that
> searches incident to arrest are reasonable "*in order
> to remove any weapons* [the arrestee] might seek to
> use" and "*in order to prevent* [the] concealment or
> destruction" of evidence (emphasis added)).  If there
> is no possibility that an arrestee could reach into
> the area that law enforcement officers seek to search,
> both justifications for the search-incident-to-arrest
> exception are absent and the rule does not apply.

E.g., <u>Preston v. United States</u>, 376 U.S. 364, 367–368,
84 S. Ct. 881, 11 L. Ed. 2d 777 (1964).

<u>Gant</u>, 556 U.S. at 339, 129 S. Ct. 1710.

Third, "[t]he plain view exception allows officers to seize evidence in plain view if they are lawfully in the position from which they view the evidence, the incriminating nature of the evidence is immediately apparent, and the officers have a lawful right of access to the evidence." <u>United States v. De Jesus-Batres</u>, 410 F.3d 154, 159 (5th Cir. 2005). <u>See also</u> <u>Trent v. Wade</u>, 776 F.3d 368, 386 (5th Cir. 2015) ("Supreme Court precedent permits officers to seize contraband in plain view so long as its incriminating character is 'immediately apparent' and the officers are 'lawfully located in a place from which the object can be plainly seen....'") (quoting <u>Horton v. California,</u> 496 U.S. 128, 136–37, 110 S. Ct. 2301, 110 L. Ed. 2d 112 (1990) (internal quotation marks omitted).

In the present case, Reed acknowledges that she gave the defendant officers permission to search her home for Davin Clark. She contends, though, that their search exceeded the scope of her consent because after they had already located (and arrested) Clark, which was the purpose of her consent, the officers conducted an illegal, warrantless search of her home. And that is when they found the marijuana and methamphetamine.

9

As to the marijuana, it is undisputed that the officers, having been granted permission by Reed to search for Clark, were lawfully in her bedroom, and that the marijuana was in plain view, sitting in or by an open container on top of Reed's dresser.  Both officers were familiar with appearance of marijuana from their years of police experience such that it was immediately apparent to them that the substance was likely marijuana.  Thus, no warrant was needed with regard to the search which revealed the marijuana.

The officers contend there was no violation of the Fourth Amendment with respect to the search/seizure of the methamphetamine and related paraphernalia, inasmuch as these items were found during a search incident to Clark's arrest. The officers assert, and Reed does not dispute, that the box containing the methamphetamine was within Clark's reach at the time of his arrest and the officers' seizure of that box.  Reed contends, however, that Clark was already in handcuffs and thus secured, so that there was no longer any arguable justification for a search incident to his arrest.  Yet numerous courts have found searches lawful under the incident to arrest exception under analogous circumstances, reasoning that the fact that a suspect is in handcuffs does not necessarily foreclose the possibility that he could gain access to items within his immediate vicinity.  See, e.g., United States v. Ferebee, 957

F.3d 406, 419–20 (4th Cir. 2020) (concluding that defendant was not "secured" within in meaning of <u>Gant</u> so that warrantless search was justifiable where defendant, although handcuffed, could still walk around somewhat freely and could have made a break for the backpack inside the house); <u>United States v. Lomax</u>, 744 F. App'x 754, 756–57 (3d Cir. 2018), <u>cert. denied</u>, 139 S. Ct. 932, 202 L. Ed. 2d 657 (2019) (concluding that although defendant's hands were cuffed behind his back at the time of the search, that fact is unavailing where there was still a reasonable possibility he could have accessed the gun hidden in the jacket he had dropped beside him); <u>United States v. Cook</u>, 808 F.3d 1195, 1199-1200 (9th Cir. 2015) (holding that search of backpack was lawful under <u>Gant</u> even though defendant was face-down on the ground with his hands cuffed behind his back at the time of the search because there was an objectively reasonable possibility that he could break free and reach the backpack); <u>United States v. Perdoma</u>, 621 F.3d 745, 750-53 (8th Cir. 2010) (holding that warrantless search of bag in public bus terminal was appropriate under <u>Gant</u> even though defendant was handcuffed and in the presence of several police officers); <u>United States v. Shakir</u>, 616 F.3d 315, 320-21 (3d Cir. 2010) (recognizing "handcuffs are not fail-safe", and finding that warrantless search of bag was proper search incident to arrest even though defendant was handcuffed and guarded by two

policemen when bag was at defendant's feet and thus accessible to him).

The defendant officers could reasonably have anticipated that Clark might attempt to evade or resist arrest or that additional drugs might be present.  The fact that Clark was handcuffed did not negate their justification for searching the area within his immediate vicinity as a lawful search incident to arrest.  Therefore, defendants are entitled to qualified immunity as to this claim.

### False Arrest

Reed claims that the defendant officers violated her Fourth Amendment right to be free from unreasonable seizure by arresting her for possession of a controlled substance without a warrant and without probable cause.  To establish that defendants violated Reed's constitutional rights by arresting her, Reed must show that the officers lacked probable cause. Deville v. Marcantel, 567 F.3d 156, 164 (5th Cir. 2009) (citing Haggerty v. Tex. S. Univ., 391 F.3d 653, 655 (5th Cir. 2004)). See Hogan v. Cunningham, 722 F.3d 725, 731 (5th Cir. 2013) (quoting United States v. Castro, 166 F.3d 728, 733 (5th Cir. 1999) (en banc) (per curiam)) ("It is well established that under the Fourth Amendment a warrantless arrest must be based on probable cause.").  "Probable cause for an arrest made without a warrant 'exists when the totality of facts and circumstances

12

within an officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed an offense.'" Id. (quoting United States v. Hebert, 131 F.3d 514, 524 (5th Cir. 1997)).  This standard "'requires substantially less evidence than that sufficient to support a conviction.'"  Id. (quoting United States v. Ho, 94 F.3d 932, 936 (5th Cir. 1996) (internal quotation marks and citation omitted)).

For purposes of qualified immunity analysis, the question is whether plaintiff has shown that the defendant officers could not reasonably have believed that they had probable cause, that is, that they could not have reasonably believed "there was a fair probability that [Reed] had committed or was committing an offense." Haggerty v. Tex. S. Univ., 391 F.3d 653, 656 (5th Cir. 2004).  "Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." Westfall v. Luna, 903 F.3d 534, 542–43 (5th Cir. 2018) (quoting Mendenhall v. Riser, 213 F.3d 226, 230 (5th Cir. 2000)).

Here, the officers, having discovered in Reed's bedroom what they concluded, based on their years of experience in law enforcement and field tests conducted at the scene, were marijuana and methamphetamine, could reasonably have concluded there was probable cause for Reed's arrest for possession of

controlled substances.  Reed argues that she could not have been
in possession of any drugs found in her home because she was not
present in the home when the drugs were found.  As defendants
note, however, under Mississippi law, possession of a controlled
substance may be actual or constructive.  Berry v. State, 652
So. 2d 745, 749 (Miss. 1995).  Constructive possession may be
established where the evidence, considered under the totality of
the circumstances, shows that the defendant knowingly exercised
control over the contraband. Id. (quoting Curry v. State, 249
So. 2d 414, 416 (1971)).  See Brown v. Byrd, No. 1:15CV115-LG-
RHW, 2016 WL 426551, at *6 (S.D. Miss. Feb. 3, 2016), judgment
entered, No. 1:15CV115-LG-RHW, 2016 WL 427374 (S.D. Miss. Feb.
3, 2016) ("For constructive possession, the State must show that
the defendant 'was aware of the cocaine and intentionally, but
not necessarily physically, possessed it.'") (quoting Knight v.
State, 72 So. 3d 1056, 1063 (Miss. 2011)).  The Mississippi
Supreme Court has specifically held that there is a rebuttable
presumption that "one who is the owner in possession of the
premises . . . in which contraband is kept . . . is in
constructive possession of the articles found in or on the
property possessed."  Dixon v. State, 953 So. 2d 1108, 1113
(Miss. 2007).  See also Knight v. State, 72 So. 3d 1056, 1063
(Miss. 2011) (citing Dixon, at 1113) (stating, "this Court has
affirmed a conviction based on constructive possession when . .

14

. [t]he defendant owned the premises where the drugs were found and failed to rebut the presumption that he was in control of such premises and the substances within . . . .").

It is undisputed that the drugs were found in Reed's bedroom in the residence of which she was the sole lessor. Notwithstanding this, she argues that the officers could not reasonably have thought the drugs were hers given the facts that (1) they did not see the drugs when they first searched the home for Clark and she had not been in the home in the interim long enough to have left them there, and (2) the drugs were found in close proximity to Clark, for whom they had an arrest warrant for conduct involving drugs.  However, the officers have provided uncontradicted testimony that the first time they entered the home, they conducted only a cursory look for Clark. At that time, they entered the master bedroom only far enough to see that Clark could not have been hiding under the bed. Moreover, the marijuana was found on Reed's dresser in a "glittery" make-up-type box, which they reasonably could have concluded belonged to her, and not Clark.  The same holds true for the methamphetamine found nearby.  Under the circumstances presented to them, defendants could reasonably have concluded that the drugs in Reed's bedroom in her home belonged to Reed, notwithstanding the fact that Clark was present and was wanted

on charges involving drugs.[4]  Accordingly, they have qualified

immunity as to Reed's claim for false arrest.

     Seizure of Tax Refund

     A seizure occurs when "'there is some meaningful

interference with an individual's possessory interests' in the

property seized."  PPS, Inc. v. Faulkner Cty., 630 F.3d 1098,

1102 (8th Cir. 2011) (quoting United States v. Jacobsen, 466

U.S. 109, 113, 104 S. Ct. 1652, 80 L. Ed. 2d 85 (1984)).  "[T]he

Fourth Amendment does not prohibit all unwarranted seizures,

only *unreasonable* ones."  Id. at 1103.  A warrantless seizure of

property is reasonable under the Fourth Amendment if an officer

has probable cause to believe that the property is forfeitable

_____

[4]     Even if there were doubt as to whether the officers could
reasonably have believed the methamphetamine belonged to Reed --
in the court's opinion, -- that is not the case with the
marijuana, which appeared more obviously to have been hers.
Under applicable law, "[i]f there was probable cause for any of
the charges made ... then the arrest was supported by probable
cause, and the claim for false arrest fails."  Price v. Roark,
256 F.3d 364, 369 (5th Cir. 2001) (citing Wells v. Bonner, 45
F.3d 90, 95 (5th Cir. 1995); see also O'Dwyer v. Nelson, 310
Fed. Appx. 741, 745 (5th Cir. 2009) ("'[T]o prevail in a § 1983
claim for false arrest,' ... [a]s applied to the qualified
immunity inquiry, the plaintiff must show that the officers
could not have reasonably believed that they had probable cause
to arrest the plaintiff for any crime.").  Although the charge
of marijuana possession was a misdemeanor and Mississippi law
requires a warrant for misdemeanors not occurring in the
presence of an arresting officer, the United States Constitution
imposes no such warrant requirement.  See Pope v. Kallas, No.
CIVA1:02CV99WJGJMR, 2006 WL 130307, at *4 (S.D. Miss. Jan. 13,
2006).

16

contraband . . . ."  <u>Florida v. White</u>, 526 U.S. 559, 565, 119 S.
Ct. 1555, 143 L. Ed. 2d 748 (1999).

When Reed was arrested, the defendant officers seized
$3,073 in cash from Reed's purse.  This money was Reed's tax
refund.  Reed alleges that defendants could not have reasonably
believed her tax refund was forfeitable contraband; it was not
found in proximity to any drugs and they otherwise had no reason
to believe it had any connection to any drug offense.  <u>See</u> <u>Cowan</u>
<u>v. Mississippi Bureau of Narcotics</u>, 2 So. 3d 759, 765 (Miss. Ct.
App. 2009) (Sections 41-29-153(a)(5) and (7) of the Mississippi
Code, in effect at time of offense, makes money subject to
forfeiture if it has been "used, or intended for use, in
violation" of the Uniform Controlled Substances Law and having
been found in close proximity to forfeitable drug manufacturing
or distributing paraphernalia).  Defendants do not contend in
their motion that they had probable cause for the seizure of
Reed's tax refund.  Instead, characterizing her claims as being
brought for violation of her procedural due process rights under
the Fourteenth Amendment, they argue that under <u>Parratt v.</u>
<u>Taylor</u>, 451 U.S. 527, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981),
her claim fails as a matter of law because she had an adequate
post-deprivation remedy to secure the return of the seized
money.  <u>See</u> <u>Parratt</u>, 451 U.S. 527, 101 S. Ct. 1908 (holding that
a plaintiff who alleges a deprivation of property as a result of

a random and unauthorized act of a government official fails to
state a constitutional violation if the plaintiff seeks a
postdeprivation remedy and one is provided by the state); see
also Hudson v. Palmer, 468 U.S. 517, 104 S. Ct. 3194, 82 L. Ed.
2d 393 (1984) (even where intentional deprivation occurs, due
process clause not implicated where there is an adequate state
post-deprivation remedy).  However, "Parratt does not apply if
the plaintiff claims a violation of a substantive constitutional
right, such as a right secured by the Bill of Rights or
protected under substantive due process." Craig v. St. Martin
Par. Sheriff, 861 F. Supp. 1290, 1302 (W.D. La. 1994) (Parratt
did not bar plaintiff's Fourth Amendment claim for illegal
seizure) (citing Zinermon v. Burch, 494 U.S. 113, 124-25, 110 S.
Ct. 975, 983, 108 L. Ed. 2d 100 (1990) ("A plaintiff . . . may
bring a § 1983 action for an unlawful search and seizure despite
the fact that the search and seizure violated the State's
Constitution or statutes, and despite the fact that there are
common-law remedies . . . .  A plaintiff . . . may invoke § 1983
regardless of any state-tort remedy that might be available to
compensate him for the deprivation of these rights.").

    Defendants' motion, therefore, will be denied as to
plaintiff's claim for the seizure of her money.

Remaining Claims

Reed has undertaken to allege claims against defendants for malicious prosecution; conspiracy to violate her Fourth and Fourteenth Amendment rights by "bringing about her unlawful arrest, prosecution and imprisonment"; reckless investigation; and against Chief Horn for failure to train/supervise, resulting in her unlawful arrest, imprisonment and prosecution. Although defendants moved for summary judgment on these claims, plaintiff does not address the claims or defendants' arguments in her response. Defendants argue that Reed has thus abandoned these claims. That is a reasonable interpretation of her response, or lack of response. See Criner v. Texas--New Mexico Power Co., 470 F. App'x 364, 367 (5th Cir. 2012) (quoting Keenan v. Tejeda, 290 F.3d 252, 262 (5th Cir. 2002) ("'If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived . . . .'"); see also Scales v. Slater, 181 F.3d 703, 708 n.5 (5th Cir. 1999) (noting that the plaintiff abandoned her disparate impact claim in district court when she neither contested defendant's arguments for dismissal of that claim nor demonstrated that her statistical evidence demonstrated pretext). Even if plaintiff has not waived opposition to summary judgment on these claims by failing to respond to defendants' arguments for summary judgment, summary judgment is nevertheless in order for the reasons assigned in

defendants' motion.  As defendants correctly argue, a claim for malicious prosecution is not cognizable under § 1983.  See Castellano v. Fragozo, 352 F.3d 939, 953 (5th Cir. 2003) (en banc) ("the assertion of malicious prosecution states no constitutional claim").  Likewise, there is no constitutional right to be free from a reckless investigation.  Sanders v. English, 950 F.2d 1152 (5th Cir. 1992); Hernandez v. Terrones, 397 F. App'x 954, 965 (5th Cir. 2010).  As to her conspiracy claim, Reed has presented no evidence of any conspiracy, and in any event, there is no constitutional violation on which to base such a conspiracy claim.  See Pfannstiel v. City of Marion, 918 F.2d 1178, 1187 (5th Cir. 1990), abrogated on other grounds as recognized by Martin v. Thomas, 973 F.2d 449, 455 (5th Cir. 1992) (conspiracy claim requires proof of "(1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy.").  Lastly, plaintiff has offered no proof to support a claim for failure to train/supervise.  Such a claim requires proof that the defendant supervisor "failed to supervise or train the subordinate official", that a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights, and the failure to train or supervise amounts to deliberate indifference.  Smith v.

Brenoettsy, 158 F.3d 908, 911–12 (5th Cir. 1998).  "For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id. at 912 (internal quotation marks omitted).  To establish deliberate indifference, "a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation."  Cousin v. Small, 325 F.3d 627, 637 (5th Cir. 2003) (internal quotation marks omitted).  Plaintiff has failed to offer proof to establish any of the elements of this claim.

Conclusion

Based on the foregoing, it is ordered that the motion of defendants White and Horn for summary judgment is granted in part and denied in part, as set forth herein.

SO ORDERED this 15th  day of June, 2020.


/s/  Tom.  S. Lee                .
UNITED STATES DISTRICT JUDGE

21